UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  vs.<br><br>JAMES JOSEPH THOMPSON,<br><br>     Defendant. | CR. 15-40107-01-KES<br><br>ORDER DENYING MOTION TO SUPPRESS |

   Defendant, James Joseph Thompson, is charged in a superseding indictment with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Docket 82. Thompson moves to suppress all physical evidence seized from his person, his residence, his vehicles, and his storage unit, which evidence was seized pursuant to two search warrants. Docket 78. The motion was referred to a United States magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

   During the evidentiary hearing, the magistrate judge heard testimony from one law enforcement officer and Thompson. During the hearing, documents pertaining to the request for a search warrant and two photographs of Thompson's residence were entered into evidence. The magistrate judge issued a report and recommended denial of Thompson's motion to suppress. Docket 105. Thompson objects to the report and recommendation. Docket 106. For the following reasons, the report and recommendation is adopted in part.

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court should make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Id.* "If a party objects to the magistrate judge's report and recommendation with respect to a dispositive matter, the district court judge must conduct a *de novo* review of the disputed portion of the magistrate judge's report and recommendation." *United States v. Benitez*, 244 F. App'x 64, 66 (8th Cir. 2007). A motion to suppress evidence is a dispositive motion that requires de novo review. Fed. R. Crim. P. 59(b)(1); (3). De novo review in the context of reviewing a magistrate judge's report and recommendation does not require a new evidentiary hearing and only means a district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980) (internal quotations and citations omitted). In conducting de novo review, this court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

**FACTS**

According to the testimony provided and the exhibits introduced at the evidentiary hearing, the pertinent facts are as follows:

Beginning in 2012, Thompson resided at 1009 North Lowell Avenue in Sioux Falls, South Dakota. On July 9, 2015, the Sioux Falls Police Department

(SFPD) received an anonymous tip stating that Thompson was selling methamphetamine and marijuana. The tipster indicated that Thompson was receiving drugs through the mail and that Thompson was a dangerous person. The tipster also provided a physical description of Thompson and his address, phone number, vehicle make and model, and vehicle license plate information.

On August 10, 2015, SFPD detectives Nick Cook and Terrance Matia conducted surveillance of Thompson's residence. They noticed a gray Honda matching the description provided in the anonymous tip. They also noticed an A-OK Garbage Service (A-OK) trash container in front of Thompson's house, located in between the garage's main door and the pedestrian door.[1]

On Friday, August 14, 2015, Detective Matia contacted A-OK Garbage Service. A-OK confirmed that it provided garbage removal service for Thompson and that it removed garbage from his home on Tuesdays between 6:00 a.m. and 6:30 a.m. A-OK agreed to arrange a controlled collection of Thompson's trash.

On Tuesday, August 18, 2015, Detective Matia met an A-OK truck driver near Thompson's house. At that time, Thompson's trash container was located a few feet in front of the garage door. Detective Matia watched from afar as the A-OK employee rolled the garbage container down the driveway and dumped its contents into the collection area of the truck. The collection area was empty at

---

[1] Thompson's house is a one story ranch-style home. It features a double garage with one garage door. It also has a pedestrian door in between the garage door and the main entrance to the home. There is a large window in between the pedestrian door and the main entrance. *See* Exhibits A & B.

that time. Detective Matia retrieved the trash from the truck's collection area moments later.

Detective Matia took Thompson's trash to the Minnehaha County Sheriff's Office to conduct the search. The trash consisted of three white bags, all of which were tied shut at the top. According to Detective Matia, numerous items connected to drug activity were found in the garbage bags: a heat sealed bag, a Zig Zag Cigarillos package, and eight chemical bottles typically used in marijuana grow sites.

On August 18, 2015, Detective Matia received a report issued by Federal Bureau of Investigation (FBI) Special Agent David Keith. The report detailed information obtained from an in-person interview with a confidential Source of Information (SOI). SOI identified the house located at 1009 North Lowell Avenue, Sioux Falls, South Dakota, as the home where "James" lived. SOI informed Special Agent Keith that he or she had ingested methamphetamine at that residence, and that James obtained the methamphetamine from a gallon sized zip lock bag that was apparently full of methamphetamine. SOI also provided a phone number for James that was later identified as Thompson's phone number. Because SOI had historically provided accurate information, Special Agent Keith believed SOI was credible here as well.

On August 25, 2015, Detective Matia met an A-OK truck driver to conduct another controlled collection of Thompson's trash. Detective Matia supervised the trash pull from afar while the A-OK employee rolled Thompson's trash container down the driveway and dumped the trash into an empty

collection area of the truck. From this collection area, Detective Matia obtained four white trash bags that contained the following drug related items: one large heat sealed bag, one piece of a plastic heat sealed bag that contained marijuana residue, two empty packages of marijuana-infused product, one Zig Zag Cigarillos package, two plastic bags containing an unknown white powder residue, and five documents. Two of the documents referenced a storage unit.

On August 25, 2015, based on the information obtained during Detective Matia's investigation, he obtained a search warrant for Thompson's person, his home, his cars, and a storage unit. Detective Matia executed the search of Thompson, his home, and his car on August 26, 2015. The search revealed cash, drugs, and drug paraphernalia. It was later determined that the storage unit was actually located in Luverne, Minnesota. Officers obtained a warrant to search the storage unit and executed the search on August 27, 2015.

Thompson moved to suppress all evidence obtained from both the Sioux Falls and Luverne search warrants. Docket 78. Following an evidentiary hearing, the magistrate judge issued a report and recommendation. Docket 105. The report and recommendation concluded that Thompson's trash container was not located in the curtilage of his home at the time it was collected, and that the A-OK employee had a license to enter the property to remove the trash container. Additionally, the report and recommendation concluded that Thompson did not have an objectively reasonable expectation of privacy in the trash after placing it in the container. The report and

recommendation therefore concluded that the trash pull did not violate Thompson's Fourth Amendment rights. *Id.* at 30-31.

The report and recommendation also determined that the affidavit filed in support of the Sioux Falls search warrant featured sufficient information to establish probable cause even if the court disregarded information obtained from the trash pulls. Alternatively, the report and recommendation found that the *Leon* good faith exception applied. *Id.* at 42-45. Thus, the report recommended denial of the motion to suppress.

## DISCUSSION

### A.      Objection 1 – Objective Expectation of Privacy.

Thompson objects to the determination that he did not maintain an objectively reasonable expectation of privacy in the trash bags at the time of the trash pull. Thompson argues that the close proximity between the trash container and his home at the time of the trash pull establishes an objective expectation of privacy in the trash bags. Thompson also asserts that the report and recommendation fails to properly contemplate that he did not move the trash container to the curb for disposal.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A Fourth Amendment violation occurs when an officer commits an unlicensed physical intrusion into a protected area or when a search violates a person's reasonable expectation of privacy. *See Florida v. Jardines*, 133 S. Ct. 1409, 1417 (2013)

("The *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*,' the traditional property-based understanding of the Fourth Amendment"). Under expectation of privacy analysis, "[t]he warrantless search and seizure of garbage bags left . . . outside the [] house would violate the Fourth Amendment only if [Thompson] manifested a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (additional citations omitted)). Thompson bears the burden of establishing an objective expectation of privacy in the trash bags. *United States v. James*, 534 F.3d 868, 872-73 (8th Cir. 2008).

When evaluating whether a person has a reasonable expectation of privacy in trash, courts examine whether the trash was exposed to the public. "It is well settled that there is no reasonable expectation of privacy in trash left at the curb in an area accessible to the public for pick-up by a trash company." *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012). The general rule establishes that "[t]he constitutionality of a trash pull depends upon 'whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable.' " *Id.* (quoting *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992)). Because Thompson's garbage container was located near his home, and not the curb, at the time of the trash pull, the court must determine whether public access to the trash container was limited enough for society to recognize Thompson's subjective expectation of privacy in the trash as objectively reasonable.

As an initial matter, the court notes that considerations pertaining to whether Thompson personally moved the trash container to the curb are only relevant in subjective expectation of privacy analysis. As detailed above, Eighth Circuit precedent establishes that the main consideration in objective expectation of privacy analysis is whether the public could have accessed the container at the time of the search. *See Williams*, 669 F.3d at 905. Thus, Thompson's first argument does not provide a basis for recognizing an objective expectation of privacy in the trash bags.

The court also finds that Thompson's trash container was readily accessible to the public. While the trash container was located only a few feet away from the home, it was also located in close proximity to the walkway that any visitor would utilize to approach the home. *See* Exhibit A & B; *see also Jardines*, 133 S. Ct. at 1415 (stating that visitors of all kinds have an implied license to utilize the walkway to the front door of a home). Additionally, because the trash pulls were executed on collection day, the container was easily visible and positioned for the express purpose of removal. Thus, the court adopts the report and recommendation's determination that Thompson did not maintain an objectively reasonable expectation of privacy in the trash bags because Thompson placed his "garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it.' " Docket 105 at 30 (quoting *Greenwood*, 486 U.S. at 40-41). Thompson's first objection is therefore overruled.

**B.     Objection 2 – Probable Cause without the Trash Pulls.**

Thompson objects to the report and recommendation's conclusion that, after omitting information obtained from the trash pulls, the affidavit filed in support of the search warrants detailed sufficient facts to establish probable cause. " '[T]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). Probable cause is assessed " 'from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case.' " *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Reinholz*, 245 F.3d 765, 766 (8th Cir. 2001)). A probable cause determination is based upon a "common-sense reading of the entire affidavit." *Id.*

" 'When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.' " *Solomon*, 432 F.3d at 827 (alterations in original) (internal quotations omitted) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)). Thus, the court's review will be limited to the affidavit submitted in support of the request for a search warrant.

"If the affidavit relies on information from an informant, 'the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit

provided probable cause to support the search.' " *Rodriguez*, 711 F.3d at 936 (quoting *Solomon*, 432 F.3d at 827). " 'Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence.' " *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). " 'If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.' " *Id.* (quoting *Williams*, 10 F.3d at 593).

Here, the court finds that the information obtained from the informants, particularly SOI, is reliable. While Detective Matia did not have personal interaction with SOI, FBI Special Agent Keith provided Detective Matia with a report stemming from Special Agent Keith's in-person interview with SOI. Personal interaction with SOI increases the reliability of the information obtained. *See United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996). And Special Agent Keith previously determined SOI is a credible informant. *See United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (stating an informant's track record of providing reliable information strengthens credibility of current information). SOI also admitted that he or she used methamphetamine with Thompson, which is against SOI's penal interest and further increases reliability of the drug related allegations. *See LaMorie*, 100 F.3d at 553 ("[S]tatements against the penal interest of an informant naturally carry considerable weight.").

Information provided by the two informants is also jointly corroborative. *See Keys*, 721 F.3d at 518 ("[T]he receipt of consistent information from two separate sources is a form of corroboration."). The information was consistent as to Thompson's home address, his vehicle, his phone number, and the methamphetamine sales allegations. In addition to independently confirming the informants' allegations as to Thompson's address, vehicle, and phone number, Detective Matia was also able to confirm from a United States Postal Inspector that Thompson had received multiple packages through the mail from locations known for drug trafficking, which was consistent with the anonymous informant's allegation. Independent corroboration of information obtained from an informant increases the reliability of uncorroborated drug related information provided by the informant. *See United States v. Ketzeback*, 358 F.3d 987, 992 (8th Cir. 2004); *Rodriguez*, 711 F.3d at 936 ("[i]t is well established that even the corroboration of minor, innocent details can suffice to establish probable cause").

Based on the foregoing, the court finds that the drug related allegations provided by both informants are sufficiently reliable to establish probable cause to search. The information provided by the informants is consistent, and it was sufficiently corroborated by law enforcement to establish that "there [was] a fair probability that contraband or evidence of a crime [would] be found" in Thompson's possession. *Rodriguez*, 711 F.3d at 936 (8th Cir. 2013). As such, even without the information obtained from the trash pulls, the affidavit filed in support of the search warrant contained sufficient information

to establish probable cause to search Thompson's person, his cars, and his residence.[2] Thus, Objection 2 is overruled, and the court adopts this portion of the report and recommendation.

### C.     Objection 3 – Good Faith Exception.

Thompson objects to the report and recommendation's alternative conclusion that the evidence against Thompson should not be suppressed because law enforcement acted in good faith in executing the search warrant. Because the court adopts the report and recommendation's conclusions that Thompson lacked an objective expectation of privacy in the trash bags, and that probable cause supported the issuance of the Sioux Falls search warrant without considering information obtained in the trash pulls, the court does not need to reach the issue of whether the good faith exception is applicable here. Thus, the court does not adopt that portion of the report and recommendation.

### CONCLUSION

Because Thompson's trash container was located where the public could easily access the trash bags, the court finds that he did not maintain an objectively reasonable expectation of privacy in the trash bags at the time of the trash pulls. Additionally, excluding evidence obtained in the trash pulls, the court finds that the drug related allegations from the two informants were sufficiently reliable to establish probable cause to issue the Sioux Falls search

---

[2] The court also adopts the report and recommendation's determination that, without evidence obtained in the trash pulls, there is insufficient evidence cited in the affidavit to justify the warrant to search the storage unit in Minnesota. But because the court found that the trash pulls did not violate the Fourth Amendment, as discussed in Section A, *supra*, the affidavit provides probable cause for the Minnesota warrant as well.

warrant. The court declines to address the good faith exception. Thus, the report and recommendation is adopted in part. Accordingly, it is

ORDERED that the motion to suppress (Docket 78) by defendant James Joseph Thompson is denied.

Dated June 6, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE